UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| RICHARD MORGAN KINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21-cv-00093-LEW |
| | ) | |
| AROOSTOOK COUNTY JAIL, | ) | |
| *et al*. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
AND PLAINTIFF'S MOTION FOR CONTINUANCE**

This matter is before the Court on Defendants' Motions for Summary Judgment (ECF Nos. 30, 36). Plaintiff opposes Defendants' motions, while also requesting that I continue this proceeding to afford him the opportunity to retain an attorney. *See* Pl's Sur-reply (ECF No. 44).

**BACKGROUND**

Plaintiff, Richard Morgan Kinney, is a Maine resident who brings this case *pro se* to challenge certain alleged violations of his civil rights by several employees or contractors of the Aroostook County Jail (the "Jail"). Plaintiff was incarcerated in the Jail from July 9, 2020, through February 19, 2021. This case arises from multiple interrelated disputes between Plaintiff and jail employees or contractors during an eleven-week period between November 2020 and January 2021.

While incarcerated at the Jail, Plaintiff participated in the Jail's medication assisted treatment ("MAT") program, through which he was prescribed suboxone to manage his opioid abuse. The MAT program is administered by Aroostook Mental Health Center ("AMHC"); Dr. William Schaffer, an AHMC staff member, is responsible for prescribing medications through the MAT program and making decisions concerning participation in the MAT program. Medical professionals who work at the Jail—but are employed by private entity MedPro Associates, not the Jail—are responsible for distributing medications, including MAT medications, to inmates. In general, the Jail's medical staff provide medications to patients in their cells for inmates to take on their own. However, the medical staff administer MAT medications directly to inmates in a separate MAT dosing room in order to prevent the highly sought-after MAT drugs from being distributed among the jail population. The record suggests that Defendant Alison Willette, a nurse employed by MedPro Associates who works at the Jail, often is responsible for providing MAT medications to inmates during the dosing process.

Plaintiff's disagreements with jail staff began shortly after he began participating in the MAT program in November 2020, though his disputes with jail officials initially were unrelated to the MAT program. On November 13, 2020, Plaintiff complained to Nurse Willette that he was experiencing dental pain. Willette noted inflammation in Plaintiff's jaw and reported her assessment to Defendant Ronald Oldfield, a Physician Assistant employed by MedPro Associates who works at the Jail. Oldfield prescribed a course of antibiotics for Plaintiff. On November 18, Plaintiff reported that the pain in his jaw had not subsided. After a brief assessment, Willette concluded that Plaintiff appeared fine and did not need additional

medication at that time. Plaintiff reports that, as Willette walked away, he remarked to a nearby corrections officer that he believed Willette had treated him rudely during the assessment; Plaintiff then requested and completed a grievance form complaining of Willette's alleged mistreatment of him. Nov. 18, 2020 Grievance Report (ECF No. 31-5). Craig Clossey, the Jail's Administrator, responded to Plaintiff's grievance, finding that Plaintiff had been "badgering" Willette and recommending that Plaintiff route any future medical needs through the Jail's established procedures for such requests. (Nov. 18, 2020 Grievance Report). Though the Jail's rules provide that an inmate may appeal the resolution of a grievance to the Aroostook County Sheriff, see Internal Grievance Procedure 2 (ECF No. 31-4), there is no evidence that Plaintiff appealed the resolution of his grievance against Willette, and the Sheriff attests that he received no such appeals from Plaintiff. Gillen Aff. (ECF No. 34).

The next day, November 19, Defendant Arthur Thorne, a corrections officer at the Jail, filed an incident report asserting that Plaintiff claimed to be participating in the MAT program because he had "a right to get high." Nov. 19, 2020 Incident Report (ECF No. 31-9). Plaintiff disagrees with this characterization, claiming that he told Thorne that he participated in the program because he "like[s] getting high" and hence benefits from substance abuse treatment. Pl's Opp'n 4 (ECF No. 40). That same day, Plaintiff was called in for a meeting to discuss his continued participation in the MAT program. The meeting's participants included Willette and a member of the AHMC staff with whom Plaintiff had previously met; Dr. Schaffer of AHMC also joined via videoconference. During the meeting, Dr. Schaffer asked Plaintiff about Thorne's report that Plaintiff had claimed to be participating in the MAT program as a

3

means of getting high on suboxone, which Plaintiff denied having done. Willette also reported to Dr. Schaffer that Plaintiff often argued with her during the MAT dosing procedure, which she believed disrupted the dosing process and lead to disruption from other patients. Plaintiff was told that continued disruptive behavior would result in his removal from the MAT program.

Plaintiff continued to experience strife with jail officials. A few days later, on November 23, 2020, Plaintiff confronted Thorne about the earlier incident report and accused Thorne of filing a false report. Thorne states that Plaintiff called him a "bitch" during this interaction. Thorne Incident Report Nov. 23, 2020 (ECF No. 31-10). Plaintiff disputes Thorne's recollection, asserting that he instead called Thorne a "snitch." Pl's Opp'n 6. Plaintiff also alleges that, during this interaction, Thorne threatened to write further reports on him if Plaintiff continued to argue with Thorne. Pl's Opp'n 4.

About two weeks later, in early December 2020, Dr. Schaffer decided to suspend Plaintiff from the program based on his allegedly continued disruptive behavior. Dr. Schaffer considered at least one of the aforementioned incident reports concerning Plaintiff's behavior. Plaintiff was upset by this development, and filed a grievance at this time asserting that he was removed from the MAT program in retaliation for his prior grievance against Willette. Dec. 3, 2020 Grievance Report (ECF No. 35-9). In response to Plaintiff's grievance, Clossey found that Plaintiff had not experienced retaliation because Dr. Schaffer, not jail staff, made the decision to remove Plaintiff from the MAT program. *Id.* There is no evidence that Plaintiff appealed the resolution of his grievance against Willette, and the Sheriff attests that he received no such appeals from Plaintiff. Gillen Aff. Plaintiff asserts that he found the appeal

4

procedure unintuitive, and that he attempted to seek redress for his grievances by mailing "several complaints" to state corrections officials in Augusta. Pl's Second Opp'n 2 (ECF No. 39). Over the ensuing days, Willette monitored Plaintiff for opiate withdrawal and concluded that he exhibited mild withdrawal symptoms that did not warrant treatment.

Shortly thereafter, Plaintiff's dental issues arose again. Plaintiff reported that he found his over-the-counter pain relievers unsatisfactory, and, on Plaintiff's request, Oldfield prescribed Anbesol, a topical pain reliever that Plaintiff claimed to have used in the past. After a dentist visit revealed issues necessitating the extraction of two of Plaintiff's teeth, Plaintiff was prescribed, and began receiving, a prescription-grade dose of Tylenol. Around this same time, Willette reported that another inmate claimed to have tried some of Plaintiff's Anbesol in violation of the Jail's policy against sharing medication, in response to which Oldfield ordered Plaintiff's Anbesol prescription cancelled. Over the coming weeks, Plaintiff repeatedly requested that his Anbesol be reinstated in response to various medical concerns, including continued leg pain and continued dental pain. Upon being informed that his Anbesol was discontinued due to a suspicion that he had been sharing the medication, Plaintiff denied sharing the medication and claimed that it must have been stolen from him.

Near the end of January 2021, Plaintiff regained access to both medications from which he feels he was deprived. On January 26, Plaintiff saw Oldfield for a check-up at which Oldfield prescribed Plaintiff medication for physical and mental ailments, including reinstating Plaintiff's Anbesol prescription. Oldfield attests that, as he did not find a report establishing that Plaintiff had shared the Anbesol with other inmates, he assumed that no such sharing had occurred, and thus concluded that Plaintiff was eligible to have the medication

5

reinstated. Oldfield Affidavit at ¶ 48 (ECF No. 35-3). On or around January 30, Plaintiff re-applied to, and was re-admitted to, the MAT program, rendering him eligible for continued suboxone treatment.

In March 2021, Plaintiff was transferred to Washington County Jail, where he currently resides. Shortly after his transfer to Washington County Jail, Plaintiff commenced this *pro se* action against Willette, Oldfield, Thorne, and Aroostook County Jail. Plaintiff alleges that Defendants conspired to deny him medical care and to retaliate against him for filing grievances against Willette and Thorne.[1] Plaintiff avers that he has attempted to hire a lawyer, but is indigent and has been unable to find a lawyer willing to take his case *pro bono*.

Defendants now move for summary judgment. *See* County Def.'s Mot. (ECF No. 30); Medical Def.'s Mot. (ECF No. 36). Defendants argue, first, that Plaintiffs' claims are barred because he failed to exhaust his administrative remedies within the prison system, as required by 42 U.S.C. § 1997e(a). In any event, Defendants argue, the undisputed facts in the record show that Plaintiff was not denied medical care, that any shortcomings in his medical care were nonetheless within the realm of reasonable professional medical care, and that Defendants did not retaliate against Plaintiff. Defendant Thorne also argues that, insofar as he was unaware that Plaintiff was denied medical care to which he was constitutionally entitled, Thorne is immune from suit by virtue of his official position.

Plaintiff, in an untitled filing, requests a continuance until he can recommence work release and save up enough money to hire an attorney. *See* Pl's Sur-reply (ECF No. 44).

---

[1] While Plaintiff suggests that he filed at least one formal grievance against Thorne, *see* Pl's Opp'n 4–5, the record lacks any documentation of such an occurrence.

6

Because of the posture in which this request arises, and because Plaintiff's assertion that retaining legal counsel would better enable him to respond to Defendants' motions, I will treat the request as a motion for a continuance under Federal Rule of Civil Procedure 56(d).

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where facts are in dispute, I must "draw[ ] all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." *Staples v. Gerry*, 923 F.3d 7, 12 (1st Cir. 2019) (alteration in original) (quotations omitted). If, on any remaining material factual dispute, "a reasonable jury could resolve the point in favor of the nonmoving party," I must deny the motion for summary judgment. *Id.* (quotation omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A material fact is one that has the potential to determine the outcome of the litigation. *Id.* at 248.

1. **Exhaustion**

The Prison Litigation Reform Act of 1995 mandates that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This "exhaustion requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and generally forbids a prisoner who has not

7

exhausted his available administrative remedies from maintaining a civil suit regarding prison conditions, *see Casanova v. Dubois*, 289 F.3d 142, 147 (1st Cir. 2002). Failure to exhaust is an affirmative defense, and on this motion for summary judgment, Defendants bear "the burden of establishing that no reasonable fact-finder could find that [Plaintiff] had properly exhausted his claims." *Hokenstrom v. NH Dep't of Corr.*, No. 16-2495, 2017 WL 11606784, at *1 (1st Cir. June 16, 2017) (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

The record shows that Plaintiff filed a grievance alleging retaliation by the jail staff. *See* Dec. 3, 2020 Grievance Report. However, he did not appeal this grievance to the Sheriff, *see* Gillen Aff., as is provided for by the Jail's Internal Grievance Procedures, see Internal Grievance Procedures 2 (an inmate "may appeal" the resolution of a grievance "to the Sheriff within 10 days of receipt"). This is not enough to satisfy § 1997e's "proper exhaustion" requirement, which demands that an inmate not only file a grievance in accordance with administrative polices but also "compl[y] with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Thus where, as here, an inmate files a grievance but fails properly to appeal it, he may not subsequently bring a civil suit involving the allegedly grievous conduct. *See, e.g.*, *Stile v. Strafford Cty. Dep't of Corr.*, No. 15-CV-494-SM, 2019 WL 4600380, at *6 (D.N.H. Sept. 20, 2019). Defendants have satisfied their burden of showing that Plaintiff failed to exhaust the Jail's administrative remedies.

The burden then shifts to Plaintiff to demonstrate that the administrative remedy at issue here was effectively unavailable to him and so beyond the ambit of § 1997e's exhaustion requirement. *See Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014); *cf. Asociacion de Suscripcion Conjunta del Seguro de Responsabilidad Obligatorio v. Juarbe-Jimenez*, 659

F.3d 42, 50 (1st Cir. 2011) (once defendant who has moved for summary judgment on an affirmative defense establishes elements of defense, burden shifts to plaintiff). The Supreme Court has recognized "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 578 U.S. 632, 643 (2016). First, an administrative remedy is effectively unavailable where "it operates as a simple dead end" that never results in meaningful relief. *Id.* Second, "an administrative scheme might be so opaque" that it becomes practically unusable, because "no ordinary prisoner can discern or navigate it." *Id.* at 634–44. Finally, a prisoner's failure to exhaust will be excused "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

To rebut Defendants' exhaustion argument, Plaintiff relies on *Ross*'s second category of exceptions and asserts that the appeals process is unintuitive insofar as the Jail's grievance form lacks a field for entering an appeal and he was not provided with materials with which to appeal the grievance. *See* Pl's Second Opp'n 2. But this exception from the exhaustion requirement is a "high[] bar" that looks to whether the procedures in question are comprehensible, not to whether logistical hurdles make the procedures difficult to follow. *Ross*, 578 U.S. at 644. While an inmate need not comply with administrative procedures that are "essentially unknowable," he must "err on the side of exhaustion" where an administrative procedure is merely complex, ambiguous, or susceptible to "reasonable mistake[s]." *Id.* (quotation omitted). Here, the Jail's Internal Grievance Procedures plainly state that an inmate "may appeal" the resolution of a grievance "to the Sheriff within 10 days of receipt." Internal Grievance Procedures 2. Perhaps a finder of fact could identify some complexity or ambiguity

9

in this rule, or determine that Plaintiff made a reasonable mistake in mailing complaints to state rather than county officials; but no factfinder could determine that the Jail's written requirement that appeals be mailed to the Sheriff is impossible to follow or essentially unknowable. Nor would it be reasonable to conclude that the failure on the part of jail officials to provide Plaintiff with more affirmative assistance in appealing his grievance—for example, by refusing to provide him with a copy of the grievance form—amounted to the sort of machination that would excuse Plaintiff's failure to exhaust under *Ross*'s third category. *See Crosby v. Strafford Cty. Dep't of Corr.*, No. 12-CV-383-LM, 2014 WL 4385006, at *4 (D.N.H. Sept. 3, 2014) (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)) ("Generally, the calculus requires affirmative misconduct on the part of a corrections employee").

To the extent that Plaintiff's complaint centers on alleged retaliation for filing a grievance against Willette, it may be read as an argument that Defendants attempted to thwart his use of the grievance process through intimidation. *See Ross*, 578 U.S. at 644. But again, Plaintiff does not show that any such retaliation rendered the grievance appeals process effectively unavailable to him. The First Circuit has not yet addressed when the threat of retaliation renders an administrative remedy functionally unavailable, but other circuits agree that a plaintiff must show, at minimum, that the threat of retaliation would deter a reasonable inmate from making use of the administrative remedy. *East v. Minnehaha Cty.*, 986 F.3d 816, 821 (8th Cir. 2021) (collecting cases). On this record, no reasonable fact finder could conclude that such a threat existed, because Plaintiff does not allege that he received any threats related to his use of the grievance appeals process. The one explicit threat that Plaintiff claims to have received—the threat from Thorne that, if Plaintiff continued to argue with him, he would

10

report Plaintiff's behavior, *see* Pl's Opp'n 4—was unrelated to the grievance process. Indeed, that Plaintiff avers to having immediately registered a grievance and verbal complaint over Thorne's alleged threat belies the notion that the threat deterred him from making use of the Jail's procedures. Pl's Opp'n 4. And while Plaintiff claims to have experienced retaliation for filing his first grievance on November 18, he fails to articulate why this retaliation deterred him from appealing to the Sheriff but did not deter him from filing the December 3 grievance or mailing complaints to state corrections officials. Absent any evidence that Plaintiff refrained from appealing his grievance for fear of retaliation, or that other inmates at the Jail were deterred from filing or appealing grievances, Defendants are entitled to summary judgment on this score. *See, e.g.*, *Grossman v. Martin*, No. 1:20-CV-00048-JJMLDA, 2021 WL 4775903, at *7 (D.R.I. Oct. 13, 2021) (granting summary judgment where no evidence suggested that grievance process was unavailable).

   2.   **Continuance**

Plaintiff has also requested a continuance until he can hire a lawyer, which I construe as a request for additional discovery. *See* Fed. R. Civ. P. 56(d) (permitting court to allow additional time for discovery or "issue any other appropriate order," where party opposing summary judgment motion shows that "it cannot present facts essential to justify its opposition"). I am sympathetic to Plaintiff's need for representation. But even if he were to hire an attorney, the outcome of this case would not change. Plaintiff's suit is doomed by his failure to exhaust the administrative remedies made available to him by the Jail, and the window for him to file such an appeal to the Sheriff closed in mid-December, 2020. I am unaware of any lawyer capable of turning back the clock. Accordingly, it would be futile to

pause the proceedings at this stage, and I deny Plaintiff's request. *See Martin v. Stericycle, Inc.*, 389 F. Supp. 2d 131, 135 (D. Mass. 2005) (denying as futile request for continuance under predecessor to Rule 56(d)); *cf. United States v. Torres-Rosa*, 209 F.3d 4, 10 (1st Cir. 2000) (affirming district court's denial of continuance based on futility).

## CONCLUSION

Defendants Aroostook County and Arthur Thorne's Motion for Summary Judgment (ECF No. 30) is **GRANTED**. Defendants Alison Willette and Ronald Oldfield's Motion for Summary Judgment (ECF No. 36) is **GRANTED**. Plaintiff's Motion for Continuance (ECF No. 44) is **DENIED**.

**SO ORDERED.**

Dated this 28th day of February, 2022.

                                                     /s/ Lance E. Walker
                                            UNITED STATES DISTRICT JUDGE